United States Courts
Southern District of Texas
FILED

*September 30, 2016*

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.  16-437** |
| | § | |
| **DARWIN ENRIQUE PADRON-** | § | **UNDER SEAL** |
| **ACOSTA** | § | |

## INFORMATION

THE UNITED STATES CHARGES:

### Introduction

At all times material to this information:

1.      Petroleos de Venezuela S.A. ("PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA and its subsidiaries were responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.  Bariven S.A. ("Bariven") was the PDVSA procurement subsidiary responsible for equipment purchases.  PDVSA and its wholly owned subsidiaries, including Bariven, were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).  PDVSA officers and employees were "foreign officials" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.     At all relevant times, Defendant **DARWIN ENRIQUE PADRON**

**ACOSTA** ("Defendant **PADRON**") was a U.S. lawful permanent resident and a

resident of Florida, and controlled, together with others, a number of closely held

companies, including several U.S. companies, that **PADRON** used to secure

contracts with PDVSA. **PADRON** was thus a "domestic concern" and an officer,

director, employee, agent, and shareholder of a "domestic concern" as those terms

are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

2.     At all relevant times, Jose Luis RAMOS CASTILLO ("RAMOS"), a

resident of the Southern District of Texas, was employed by PDVSA or a wholly

owned subsidiary thereof, including as a purchasing manager and superintendent of

purchasing at Bariven.  RAMOS's job responsibilities included selecting

companies for bidding panels, which allowed those companies to submit bids on

individual PDVSA projects and the ability to select winning companies for the

economic portion of the bid process.  RAMOS, who has been charged separately,

was a "foreign official" as that term is used in the FCPA, Title 15, United States

Code, Section 78dd-2(h)(2)(A).

3.     "Official F," an individual whose identity is known to the United

States, was at all relevant times employed by PDVSA or a wholly owned

subsidiary thereof, including as a senior executive for Bariven.  Official F's job

responsibilities included managing the purchasing and procurement process for

Bariven.  Official F was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

4.      Beginning in at least 2009 and continuing through at least 2014, the defendant,

### DARWIN ENRIQUE PADRON ACOSTA,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with persons known and unknown, to commit offenses against the United States, that is:

(a) being a domestic concern, and an officer, director, employee, agent, and shareholder of a domestic concern, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of:  (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to

3

do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist Defendant **PADRON's** companies in obtaining and retaining business for and with, and directing business to, Defendant **PADRON's** companies, in violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a).

(b) knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Purpose of the Conspiracy

5.       The purpose of the conspiracy was for Defendant **PADRON** and his

co-conspirators to make corrupt bribe payments to PDVSA officials, including, but

not limited to, RAMOS and Official F, to enrich Defendant **PADRON** by

obtaining and retaining lucrative energy contracts with PDVSA through corrupt

and fraudulent means, including by paying bribes to PDVSA officials, and to

engage in financial transactions to conceal and disguise the bribe payments.

### Manner and Means of the Conspiracy

6.       The manner and means by which Defendant **PADRON** and his co-

conspirators sought to accomplish the purpose of the conspiracy included, among

other things, the following, while in the Southern District of Texas and elsewhere:

7.       Defendant **PADRON** paid bribes to PDVSA officials through the use

of interstate and foreign wires in order to influence acts and decisions of certain

PDVSA officials in their official capacities and to induce the PDVSA officials to

do and omit to do certain acts, including, but not limited to:

   a. assisting **PADRON's** companies in winning PDVSA contracts;

   b. providing **PADRON** with inside information concerning the PDVSA
      bidding process;

   c. placing one or more of **PADRON's** companies on certain bidding panels
      for PDVSA projects;

    d.  preventing interference with the selection of **PADRON's** companies for PDVSA contracts;

    e.  assisting **PADRON's** companies in receiving payment for previously awarded PDVSA contracts, including by requesting payment priority for projects involving **PADRON's** companies.

8.    Defendant **PADRON,** together with others, caused bribe payments to be wired from the bank accounts of **PADRON's** companies and intermediaries to the bank accounts of PDVSA officials, their relatives, or other individuals or entities designated by the PDVSA officials who received the bribes.

9.    Defendant **PADRON** provided to PDVSA officials things of value in addition to the monetary bribes, including gifts, meals, and recreational travel, in order to obtain and retain business on behalf of Defendant **PADRON's** companies.

10.    Defendant **PADRON,** together with others, including RAMOS, attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes, which they referred to as "commissions," by creating false justifications for the bribes, including invoices for services that were never performed.

11.    Defendant **PADRON** had certain of the bribes paid into a U.S. bank account in the name of a business RAMOS owned with a relative in order to conceal the nature, source, and ownership of the bribe proceeds.

12.    Defendant **PADRON** had bribes paid into U.S. bank accounts held in the names of relatives of Official F in order to conceal the nature, source, and ownership of the bribe proceeds.

13.    Defendant **PADRON** paid bribes to other PDVSA officials through a U.S. bank account in the name of a relative of Defendant **PADRON**, or through the account in the name of a business RAMOS owned with a relative, in order to conceal the nature, source, and ownership of the bribe proceeds.

### Overt Acts

14.    In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

15.    On or about February 1, 2012, Defendant **PADRON** signed a check in the amount of $117,000 from a bank account in the name of a company owned by Defendant **PADRON** to a relative of Official F in exchange for Official F's assistance in awarding PDVSA contracts to companies owned by Defendant **PADRON** and giving payment priority to Defendant **PADRON's** companies so that they would get paid ahead of other PDVSA vendors with outstanding invoices. The memo line of the check stated "payment," followed by Official F's initials.

7

16.     On or about May 22, 2012, Defendant **PADRON** caused $682,000 to be transferred from a bank account in the name of a company owned by Defendant **PADRON** to a bank account in the name of a company that RAMOS owned with a relative in exchange for RAMOS's assistance in awarding PDVSA contracts to companies owned by Defendant **PADRON**.

17.     On or about June 15, 2012, Defendant **PADRON** caused $320,000 to be transferred from a bank account in the name of a company owned by Defendant **PADRON** to a bank account in the name of a company that RAMOS owned with a relative in exchange for RAMOS's assistance in awarding PDVSA contracts to companies owned by Defendant **PADRON**.

18.     On or about August 20, 2012, Defendant **PADRON** caused $50,000 to be wired from a bank account in the name of a relative of Defendant **PADRON** to a bank account in the name of a relative of Official F in exchange for Official F's assistance in awarding PDVSA contracts to companies owned by Defendant **PADRON** and giving payment priority to Defendant **PADRON's** companies so that they would get paid ahead of other PDVSA vendors with outstanding invoices.

19.     On or about August 28, 2013, RAMOS transferred $394,250.74 in bribe proceeds RAMOS received from Defendant **PADRON** from a bank account held in the name of a company that he owned with a relative to purchase real property in the Southern District of Texas.

8

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
(28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

20.     Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to **DARWIN ENRIQUE PADRON ACOSTA** that in the event of his conviction of the offense charged in Count 1 of the Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## NOTICE OF CRIMINAL FORFEITURE
(18 U.S.C. § 982(a)(1))

21.     Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to **DARWIN ENRIQUE PADRON ACOSTA** that in the event of his conviction of the offense charged in Count 1 of the Information, the United States intends to seek forfeiture of all property, real or personal, involved in money laundering offenses or traceable to such property.

### Money Judgment

Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of all property subject to forfeiture.

9

## Substitute Assets

22.    Defendant is notified that in the event that property subject to

forfeiture, as a result of any act or omission of defendant or his co-conspirators,

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third person;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be subdivided
       without difficulty;

the United States will seek to forfeit any other property of the defendant up to the

total value of the property subject to forfeiture pursuant to Title 21, United States

Code, Section 853(p), as incorporated by reference in Title 28, United States Code,

Section 2461(c) and Title 18, United States Code, Section 982(b)(1).


KENNETH MAGIDSON
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _____
JOHN P. PEARSON
DEPUTY CHIEF
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

BY: _____ for:
AISLING O'SHEA
DENNIS KIHM
JEREMY R. SANDERS
TRIAL ATTORNEYS