1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF TEXAS

3                  HOUSTON DIVISION

4   UNITED STATES OF AMERICA
                                    .
                                    .  Criminal Action
5   VERSUS                          .  No. H-16-CR-437
                                    .
6   DARWIN PADRON-ACOSTA,           .  Houston, Texas
                                    .  November 19, 2019
7                                   .  10:11 a.m.
                      Defendant.    .
8   . . . . . . . . . . . . . . . . .

9                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE GRAY H. MILLER
10                      **SENTENCING**

11  APPEARANCES:

12  FOR THE UNITED STATES OF AMERICA:

13          Mr. Robert Searles Johnson
            Assistant United States Attorney
14          UNITED STATES ATTORNEY'S OFFICE
            1000 Louisiana
15          Suite 2300
            Houston, Texas  77002
16          713.567.9000
            robert.s.johnson@usdoj.gov
17
            Ms. Sarah Edwards
18          Mr. Jeremy Sanders
            Ms. Sonali Patel
19          UNITED STATES DEPARTMENT OF JUSTICE
            Criminal Division, Fraud Section
20          1400 New York Avenue, NW
            Washington, DC  20005
21          202.305.6761
            202.616.2650
22          sarah.edwards@usdoj.gov
            jeremy.sanders@usdoj.gov
23          sonali.patel@usdoj.gov

24
              PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
25       TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

              Gayle Dye, CSR, RDR, CRR - 713.250.5582

1                        APPEARANCES

2                        (continued)

3  FOR THE DEFENDANT:

4          Ms. Marissel Descalzo
           TACHE, BRONIS, CHRISTIANSON AND DESCALZO, PA
5          150 Southeast 2nd Avenue
           Suite 600
6          Miami, Florida 33131
           305.537.9565
7          mdescalzo@tachebronis.com

8  PROBATION OFFICER PRESENT

9

10 INTERPRETER:

11         Ms. Ana Maria Paredes

12

13

14

15 COURT REPORTER:

16         GAYLE L. DYE, CSR, RDR, CRR
           515 Rusk, Room 8004
17         Houston, Texas   77002
           713.250.5582

18

19

20

21

22

23

24

25

              Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1                          PROCEEDINGS
 2                       November 19, 2019
 3            THE COURT:  All right.  Court calls Criminal Case
 4   16-437, United States of America versus Darwin Padron-Acosta.
 5            Who is here for the Government?
 6            MS. EDWARDS:  Good morning, your Honor.  Sarah Edwards
 7   for the United States; and with me at counsel table are Jeremy
 8   Sanders, Sonali Patel, and "Robb" Johnson.
 9            THE COURT:  All right.  Good morning to all of you.
10            MS. PATEL  Good morning.
11            THE COURT:  And for Mr. Padron?
12            MS. DESCALZO:  Good morning, your Honor.  Marissel
13   Descalzo on behalf of Mr. Padron who is present in court with
14   me.
15            THE COURT:  Good morning to you.
16                And you're from Miami?
17            MS. DESCALZO:  Yes, I am, your Honor.
18            THE COURT:  Okay.  Good trip over?
19            MS. DESCALZO:  Yes, I did.
20            THE COURT:  And Mr. Padron is present.
21                Mr. Padron, you can stand in the middle there.
22                Mr. Padron has an interpreter who is interpreting
23   the proceedings for him this morning.
24                Mr. Padron, this is a sentencing hearing in your
25   case; and I want to start by briefly describing the Court's
```

10:11:49 — line 5

10:12:23 — line 20

10:12:32 — line 25

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    sentencing procedures.

2            The US Supreme Court has held in the *Booker* case

3    that the Sentencing Guidelines are advisory and not mandatory

4    for judges.  *Booker* requires the sentencing Court to consider

10:12:46  5    the guideline ranges, but it permits the Court to tailor the

6    sentence in light of other statutory concerns, as well.

7            The Court, in the exercise of its sentencing

8    discretion, will rely on the factors set out in Section 3553(a)

9    to fashion an appropriate sentence in your case to achieve the

10:13:05  10   congressionally-mandated purposes of sentencing as set forth in

11   the Sentencing Reform Act of 1984.

12           The Court will endeavor to apply the directives

13   faithfully to the guidelines to determine the total offense

14   level and the criminal history category under the guidelines.

10:13:19  15   Thereafter, the Court will exercise its discretion in

16   determining the appropriate sentence.

17           In doing so, the Court will give considerable

18   weight to the sentencing range calculated under the guidelines.

19   Any comments by the Court in the course of this sentencing are

10:13:32  20   not to be construed as an indication that the Court believes

21   that the guidelines are mandatory or that they constrain the

22   Court's ultimate sentencing discretion.

23           The standard of proof for factual findings in

24   connection with sentencing is preponderance of the evidence; and

10:13:45  25   in determining whether that standard has been met, a presentence

report is generally considered sufficiently reliable to be used

as evidence by the trial court in making the factual

determinations which are required under the advisory guidelines.

Now, in your case, I have reviewed the

presentence report which was prepared by the probation

department.  I've gone through the objections that were filed by

the Government and by the Defendant.

I think the Government's objections have been

resolved by the revised PSR?

MS. EDWARDS:  That's correct, your Honor.

THE COURT:  All right.  Now, with respect to the

objections that were filed by the Defendant, I think there were

a total of 11.  I'm not clear on which ones might need a ruling.

It looks like Numbers 4 and 5 were going to be withdrawn.  Those

were with respect to paragraphs 28 and 29 of the PSR.  And it

looks like six through eleven have been taken care of with the

revised PSR.

So, I know your first objection just dealt with

the reference in the presentence report to the larger conspiracy

involving Mr. Shiera and Mr. Rincon; and I'm not -- obviously, I

know all that already because I've dealt with all of these

cases.

So, I understand that probation put it in for

context for me.  I'm not holding Mr. Padron to the conduct of

any of those folks in that conspiracy.  I mean, I understand

1   your objection.  So, I think -- I think you've made your point.

2           MS. DESCALZO:  Perfect.  Thank you, your Honor.

3   That's all I wanted to do.

4           THE COURT:  Okay.  And then, with respect to the

10:15:36   5   second objection, it has to do with whether he owned a company

6   called TRP.

7           MS. EDWARDS:  We are not taking the position that he

8   did, your Honor.  It was included in the PSR because someone

9   else in an interview did say that, and we provided probation

10:15:49   10   with all of the information anyone had said about Mr. Padron.

11           But our position with respect to both two and

12   three, substantively, we're not going to disagree.  Those were

13   just repeated from things others had said.

14           THE COURT:  Fine.  I'll grant objections on two and

10:16:06   15   three then.

16           MS. DESCALZO:  Thank you, your Honor.

17           THE COURT:  Okay.  All right.  Any others that need a

18   ruling?

19           MS. DESCALZO:  Not for the defense, your Honor.

10:16:12   20           THE COURT:  All right.

21           In that case, I'm going to adopt the presentence

22   report and find that the total offense level is 29 with a

23   criminal history category of I.

24           Under the advisory guidelines that suggests and

10:16:29   25   recommends an incarceration of 60 months, which is the statutory

1   maximum in this case for this offense; a period of supervised

2   release of one to three years; a fine range from 15,000 to

3   18,104,795.46 -- restitution is not applicable -- and a $100

4   special assessment.

10:16:54   5            I have read through the sentencing memorandum

6   filed on behalf of the Defendant along with all the letters of

7   support.  I've also read through the Government's motion in this

8   case.  So, I think I have a pretty good idea of where you both

9   are, but I'm going to let Ms. Edwards start on behalf of the

10:17:17   10   Government with respect to a recommended sentence in this case.

11            MS. EDWARDS:  Certainly, your Honor.  And just

12   briefly, first, we are making at this time a motion under Rule

13   5K1.1.  Do you want me to save that for later as a part of my

14   recommendation?

10:17:33   15            THE COURT:  No.  Let's put it all on the table.

16            MS. EDWARDS:  All right.  As was reflected in both of

17   the sentencing memoranda, shortly after being approached by law

18   enforcement, Mr. Padron did accept responsibility for his

19   actions.  He began to cooperate with the Government's

10:17:45   20   investigation; and we found that his cooperation, which is

21   detailed in the memorandum, provided substantial assistance to

22   our investigation.

23            It, in particular, led to a set of charges

24   against a high ranking former Venezuelan official.  In

10:18:00   25   recognition of Mr. Padron's contribution that led to the

1  investigation, we are requesting a 5K in the amount of 33

2  percent off the guideline sentence which would take our

3  recommendation down to 40 months of incarceration from the

4  advisory guidelines range of 60.

10:18:18  5           We think that this is an appropriate sentence for

6  a few reasons when we turn to the 3553(a) factors.  Looking

7  first at the seriousness of the offense that we're dealing with

8  here as well as the need to promote respect for the law and to

9  provide just punishment, we think that the actions taken by

10:18:36  10  Mr. Padron were serious.

11           It was not a mere mistake or a one-time lapse in

12  judgment.  You know, it was a conspiracy he participated in over

13  a period of years that involved several dozen payments.  It

14  wasn't a single isolated incident.  And it involved the use of

10:18:55  15  intermediaries and false invoices to conceal the scheme, all of

16  which Mr. Padron has taken responsibility for but also all of

17  which is serious and needs to be recognized as such.

18           And so, you know, when we look at the need to

19  afford adequate deterrence in determining a sentence for

10:19:12  20  Mr. Padron, the Government thinks it is important to recognize

21  that, while he has taken responsibility and cooperated, that

22  does not and cannot erase the original criminal conduct that

23  brought us all here today.

24           Finally, we've included some examples for your

10:19:30  25  Honor of -- just to promote -- or to avoid the need for

1  unwarranted disparities in sentencing, examples of a couple of

2  other Defendants who pled to similar charges who also cooperated

3  and after 5Ks received sentences of incarceration that are not

4  dissimilar from what we're requesting for Mr. Padron today.

10:19:52  5        THE COURT:  All right.  Thank you, Ms. Edwards.

6              And on behalf of the Defendant.

7        MS. DESCALZO:  Thank you, your Honor.

8              The first thing I want to say, your Honor, that's

9  important to me -- I want to clear something up -- is that the

10:20:04  10  first overt act in the conspiracy that gave rise to the

11  information in this case and the charges against Mr. Padron

12  occurred in late October, 2007.

13              There's a reference to a payment in twenty -- in

14  2006 to a Mr. Ramos that the Government makes in their response.

10:20:22  15  That was a one-time thing in 2006 when both parties were living

16  in Venezuela.  It was in bolivares, and it was a di minimus

17  amount.  It wasn't over a series of time.  And I think that

18  that's important for your Honor to understand.

19              I'm not trying to minimize the conduct here; I

10:20:39  20  just want that to be clear, that the conduct doesn't go back

21  that far.  I -- and we, obviously -- and Mr. Padron understands

22  the seriousness of this offense; and he has been living with the

23  seriousness of this offense for the past three years.

24              And I don't often come to the Court asking for a

10:21:02  25  non-jail sentence; but in this case, I believe that there are

1    multiple reasons why it's appropriate.  The first one is that,

2    unlike in other cases, Mr. Padron will pay back his forfeiture

3    judgment; and he has been paying his forfeiture judgment; and

4    he's been paying a monthly stipend towards that unlike other

10:21:23    5    cases where that doesn't happen.

6              And that forfeiture judgment is large; and it is

7    an amount that will take a long time for Mr. Padron to pay back

8    seeing that this case has completely destroyed his business, the

9    only business he's known since he was in college.

10:21:37    10              And so, he's having to find other avenues in

11    order to pay the government; but he has made a commitment to do

12    that; and he has been doing that.  So, one thing that shows the

13    seriousness of the offense and punishment is that he's paying

14    back the Government for his ill-gotten gains.

10:21:52    15              Number two, your Honor, is that, unlike other

16    white collar criminal Defendants that get charged and have to

17    spend 40 months in jail, they go to a camp; and when they go to

18    a camp, they have the ability to see their family all weekend.

19              They have the ability to be in a camp close to

10:22:11    20    home.  They have the ability to benefit from game time.  They

21    have the benefit to benefit from the First Step Act which says

22    that once 60 percent of the sentence has been completed, you can

23    seek to spend the rest of the time on supervised release.

24              Because of Mr. Padron's Immigration status, he

10:22:30    25    doesn't get to benefit from any of that.  Instead, if your Honor

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    sentences him to one day in jail, he has to go to a maximum

2    security prison.  And at this maximum security prison, he

3    doesn't get to benefit from game time or the First Step Act.

4              Instead, he has to serve all of his time there;

10:22:48    5    and then, he will be sent to an Immigration detention center.

6    And at that Immigration detention center, he will have to wait

7    until he is deported because it is very difficult to fight for

8    status in this country when you're incarcerated in one of these

9    Immigration prisons.

10:23:07   10              When he is deported, he gets to go back to

11   Venezuela.  The second that he gets off that plane in Venezuela

12   -- you heard the Government.  He has cooperated against very

13   high level officials.  The second he steps off that plane, he

14   will be detained, interrogated, and possibly tortured.

10:23:27   15              Worse, if he is released, he will be in constant

16   fear for his life; and he will have to live alone because his

17   immediate family live in the United States; and he's not going

18   to subject his wife, his two young daughters, and his two adult

19   but young sons to the danger that lurks in Venezuela if

10:23:45   20   Mr. Padron is deported and when Mr. Padron is deported.  And

21   unfortunately, the Government cannot protect Mr. Padron in

22   Venezuela.

23              I will also tell the Court that in terms of

24   deterrence, I think that it is clear by Mr. Padron's conduct for

10:24:07   25   the past three years and the cooperation that he has engaged in

1  and the danger he's put himself and his family into knowing --

2  right?  Because we -- I had to advise Mr. Padron when he signed

3  that plea agreement that his Immigration status was in peril and

4  that he was likely not going to be able to stay in the United

5  States.

6           And I had to advise him of that the first time he

7  went in to be debriefed by the Government, that the second he

8  stepped foot and sat down for a debriefing and cooperated with

9  the Government, he was likely going to sign a plea agreement;

10  and that would mean that he would be deported.

11          And despite that, Mr. Padron did the right thing

12  and agreed to sit down and proffer for the Government; and I'm

13  sure Government counsel can tell you how honest Mr. Padron was

14  that day.  He talked about conduct that was not even necessary

15  to discuss.  He laid it out all on the table.

16          And the Government trusted Mr. Padron to engage

17  in active cooperation and go out and record individuals, and not

18  one thing has happened in the past three years that Mr. Padron

19  or I have not reported to the Government.  And that, your Honor,

20  is a consequence because he has been living under the

21  Government's thumb for three years; and he gets no credit for

22  that when we sit here.

23          And your Honor, I know that the Government talks

24  about deterrence; and the Government's response says clearly

25  that likely for Padron deterrence is not an issue.  Mr. Padron

1  is not going to engage in any criminal conduct again.  I think

2  that that is very clear that he has learned the right of his

3  ways.

4           And I understand that there's a concern for

10:25:45  5  general deterrence; but I think that just recently, on Friday, a

6  judge in the Eastern District of New York sentenced an

7  individual in one of these Foreign Corrupt Practices Act, a

8  lawyer.  His name was Jeffrey Chow.

9           The case is Case Number 17-CR-466, Eastern

10:26:00  10  District of New York.  The judge was Judge Matsumoto.  It's in

11  the Petrobras bribe cases.  It's one of those.  And this is the

12  lawyer that drafted all the consulting agreements that allowed

13  the bribes to take place, and there was $30 million in bribes.

14           And Chow, the lawyer's defense team decided to

10:26:24  15  argue to the judge that he was a minimal player; and the judge

16  says, "No, he's not a minimal player."  And the Government was

17  seeking five years prison; and the Judge says, "He is not a

18  minimal player, but I am going to sentence him to probation."

19           And why did the judge sentence him -- Mr. Chow to

10:26:41  20  probation?  These were the words of the judge:  "It would be a

21  perverse result to send Chow to prison given that he was the

22  only one who proactively cooperated with the Government while

23  others involved remained away from the US and managed to keep

24  their earnings."

10:26:56  25           And that's very similar to this case, your Honor,

1   because a lot of the people -- while Mr. Padron was intimately

2   involved in assisting bringing a high level official here to the

3   United States to justice, there are many in these cases that are

4   fugitives.

10:27:14   5              And what is it teaching them, all this publicity

6   around these cases?  Don't come back to the US because they're

7   going to take your money, they're going to put you in jail, and

8   they're going to deport you.

9              I think that the general deterrence of the money

10:27:28  10   judgment and the fact that he has to go back and be deported to

11   Venezuela in fear for his life is sufficient deterrence for

12   anyone.

13              I also have to comment on the principle of like

14   defendants.  The Government has cited two cases outside of these

10:27:45  15   Venezuela bribe cases; and I could have done the same thing,

16   your Honor, because there's cases on both ends of the spectrum.

17   There are some judges that are giving time; some that are not.

18              I have a case, United States versus Gabriel

19   Jimenez, Southern District of Florida.  I was the attorney of

10:27:58  20   record.  It involved a hundred-million-dollar money laundering

21   and bribe scheme, hundred million dollars.

22              Mr. Jimenez was not the first to cooperate, not

23   the first one in.  He was given a 36-month sentence; and that

24   was before he got cooperation credit, which at the time of

10:28:15  25   sentencing they were contemplating a Rule 35.  36 months,

1    hundred million dollars.  That's more -- that's less, I'm sorry,

2    than the Government is asking for here today.

3                    The reason that I compare Mr. Padron to Mr. Ramos

4    was on purpose.  Because he is the only person -- Ramos is the

5    only Defendant in all of these cases before your Honor that has

6    any connection to Mr. Padron.

7                    And let's take Mr. Ramos for a second.  He

8    received a thirty -- I'm sorry, an 18-month sentence; but the

9    Government was seeking a 36-month sentence.  Mr. Ramos was a

10   government official.  He was the person causing these -- this

11   conduct.  Not that the vendors like Mr. Padron did not engage in

12   it.  They sure did, and they participated in the corruption.

13                   But Mr. Ramos began the conduct.  Mr. Ramos and

14   the other government officials, they were the ones shaking

15   people down.  Mr. Ramos was not only engaged in the Padron

16   conspiracy, he was engaged with Roberto Rincon and Abraham

17   Shiera; and that was huge.  Millions of -- tens of millions of

18   dollars involved in that conspiracy.  So, it would be unfair for

19   Mr. Padron to serve more time than Mr. Ramos.

20                   I think that Mr. Ramos's sentence should only be

21   the ceiling; and Mr. Padron should be much less because

22   Mr. Padron's number, it was a small nucleus; and I also have to

23   tell your Honor that, unlike the other vendors that are involved

24   here, Mr. Padron was providing real services, real products that

25   were needed.

1          There is never a question; and your Honor, to go

2     one step further, Mr. Padron's products, he had an exclusivity

3     agreement, meaning he was the only person that could buy those

4     products in Venezuela.  And those products were necessary on the

10:30:05   5     field to protect the Petroleo gas lines from corrosion.

6          But because of the way Venezuela was and the way

7     that the corruption is, he succumbed to paying bribes.  He

8     did -- and that was wrong -- because he wanted to continue in

9     his line of work; and there is no excuse for that.

10:30:25   10          But that doesn't mean that he needs to spend any

11     time in jail to learn what he did wrong.  He knows, your Honor.

12     He knows, and so does everybody else.

13          Thank you.

14          THE COURT:  Ms. Edwards, do you want to say anything

10:30:39   15     in response?

16          MS. EDWARDS:  Just a few brief factual things, your

17     Honor.

18          THE COURT:  Address Ramos, in particular.

19          MS. EDWARDS:  Certainly.

10:30:48   20          So, with respect to Mr. Ramos, Mr. Ramos received

21     and laundered approximately -- just over $7 million worth of

22     bribe payments as we discussed at his sentencing in August.

23     Some of those were for Mr. Ramos.  For some of those payments,

24     Mr. Ramos was acting as an intermediary for Mr. Padron; and the

10:31:05   25     money eventually went on to other individuals.

1          I think I see the two men as much more similar

2     than Ms. Descalzo does because Mr. Ramos was involved with

3     Mr. Padron in soliciting and accepting bribes from him; and they

4     worked together to launder those bribes, sending them to

10:31:19    5     corporate accounts using fake invoices.

6          Mr. Ramos was also accepting bribe money from

7     others.  Mr. Padron was also paying others besides Mr. Ramos.

8     The individual identified as Official F in the information

9     against Mr. Padron was completely separate from Mr. Ramos.

10:31:37   10          So, they were each involved in sort of

11     overlapping circles.  That, I think, is quite similar.  We're

12     not making a point or trying to hold Mr. Padron responsible for

13     the other larger conspiracy that you've heard a lot about, but

14     his own conspiracy was not what I would describe as small.

10:31:55   15          He made over $9 million but for the conduct at

16     issue wouldn't have been revenue for his company.  And I think

17     that $9 million in corrupt profits is a lot.

18          With respect to --

19     THE COURT:  But let me stop you.  Sorry to interrupt.

10:32:13   20     MS. EDWARDS:  Uh-huh.

21     THE COURT:  With respect to his sentence, Mr. Ramos's

22     sentence, what the Government had requested and what I actually

23     imposed in terms of the sentence for Mr. Ramos, how -- since you

24     consider them to be similar, how can you justify a 40-month

10:32:29   25     sentence for Mr. Padron when I gave Mr. Ramos 18?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          MS. EDWARDS:  Sure.  I think there are two factors.

2 One is the fact that we are recommending a smaller 5K for

3 Mr. Padron.  Mr. Ramos was one of the first in-the-door

4 cooperators upon whom this entire investigation was built.

10:32:45  5          Mr. Padron's cooperation has absolutely been

6 meaningful.  That is why we are moving for a 5K for him.  But we

7 thought it was worthy of a slightly less 5K, and that's why

8 we're recommending a smaller one.

9          The second factor would be the fact that

10:32:59  10 Mr. Padron simply profited by two-million-plus dollars more than

11 Mr. Ramos.

12          THE COURT:  Okay.  All right.  Go ahead with the rest

13 of your points.  I'm sorry.

14          MS. EDWARDS:  That's fine.

10:33:09  15          I just want to note that other defendants in this

16 broader investigation were also providing real services.  The

17 Government has never disputed that.  Mr. Padron, of course, was

18 as well; but other suppliers were also providing actual goods

19 and services to PDVSA.

10:33:21  20          We do think that the 5K is meaningful here.  I

21 think it was said that he gets no credit for everything he's

22 done in the past three years, and I would just respectfully

23 disagree with that.  I feel that we're trying to give him

24 credit.

10:33:34  25          And then, briefly, with respect to Mr. Chow who

1  was sentenced on Friday, I think the circumstances were quite

2  different.  That is not my case.  But my understanding is that

3  Mr. Chow had been living in Singapore with his family and came

4  to the United States, voluntarily submitted to its jurisdiction,

10:33:51  5  and traveled here to cooperate and see it through the end of

6  that case.  And so, I think the positioning is somewhat

7  different.

8          THE COURT:  What about the -- what about the point

9  that he has satisfied a substantial amount of the money judgment

10:34:09  10  that I imposed at the Government's request in this case?  I

11  think the money judgment was nine million.

12          MS. EDWARDS:  Uh-huh.

13          THE COURT:  And he's over $2 million at this point.

14  Is that right?

10:34:22  15          MS. EDWARDS:  Yes.

16          THE COURT:  Am I right?

17          MS. EDWARDS:  It was nine million, I think, 52,000

18  dollars; and Mr. Padron has already paid over 2.1 million.

19          THE COURT:  What effect -- what credit, I guess,

10:34:34  20  should I give him for that?  Because as you and I both know,

21  most of these money judgments and most of these restitution

22  orders, very few of them actually get paid at all.

23          But that's a substantial payment; and he's

24  continuing to pay, as I understand it.

10:34:53  25          MS. EDWARDS:  He is.  He's been making monthly

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    payments for the last six months, and we think that is a

2    meaningful sign of his good faith intention to pay off the money

3    judgment.  I will point out that, you know, some of the ways in

4    which he was able to pay off the money judgment are related to

10:35:06    5    the crime, right?

6              He sold a plane and a boat.  And if you don't

7    have assets like that from, perhaps, you know, high dollar

8    criminal schemes, then you are less able to pay off your money

9    judgment.  I think the higher amounts of money judgments in this

10:35:24   10    case that we have been seeing have also gone with higher amounts

11   of recovery.

12             But we recognize and appreciate his efforts to do

13   that, particularly, since he started making the monthly payments

14   in the last six months.

10:35:37   15             THE COURT:  All right.  Anything else?

16             MS. EDWARDS:  No, your Honor.

17             THE COURT:  Okay.

18             MS. DESCALZO:  If I may briefly respond, your Honor?

19             THE COURT:  Yes.

10:35:44   20             MS. DESCALZO:  While, yes, the boat and the plane may

21   have been related to the conduct, Mr. Padron also sold a house

22   and has another house for sale that were not related to the

23   conduct at issue here that he purchased before; and he turned

24   that money -- the first one, he turned over half to the

10:35:58   25   Government because he needs to buy a house.


                    Gayle Dye, CSR, RDR, CRR - 713.250.5582

 1            But he's selling another house, and he's paying
 2   that.  And obviously, he hasn't been engaged in this business
 3   since he was stopped by the agents; and he's been paying
 4   monthly.  So, I think that there does need to be some credit for
10:36:09   5   that.
 6            And in terms of Mr. Ramos coming to the
 7   Government first, your Honor, well, that's just luck of the
 8   draw, right?  He was a government official.  He's connected to
 9   Rincon and Shiera.  They were looking at him.  So, he gets -- he
10:36:22  10   gets to come in first.  Mr., you know, Padron, as soon as he
11   came in, he was coming in -- as soon as he was approached by
12   agents, he got counsel; and he was cooperating.
13            And again, in terms of -- I know that the
14   Government puts a big emphasis on the amount of money that
10:36:43  15   Mr. Padron made; but again, Mr. Padron is giving it back.  So,
16   there shouldn't be an emphasis on how much money he made.
17            THE COURT:  Anything else that you need to talk about
18   on behalf of your client?
19            MS. DESCALZO:  No, your Honor.
10:37:00  20            THE COURT:  Okay, good.
21            Mr. Padron, you have the opportunity, if you
22   wish, to say anything on your own behalf that you would like to
23   say before I determine your sentence.
24            MS. DESCALZO:  Your Honor, Mr. Padron does wish to say
10:37:15  25   something.  It's going to have to be in Spanish because he

1    doesn't speak English.

2         THE COURT:  No problem.

3         MS. DESCALZO:  We also have two individuals in court

4    present to speak, if you would like to hear from them; but they

10:37:27   5    did submit letters, so it's up to your Honor.

6         THE COURT:  I read all the letters, so --

7         MS. DESCALZO:  Thank you, your Honor.

8         THE COURT:  And I take into account the support that

9    he has in the courtroom, as well.

10:37:33   10        MS. DESCALZO:  Thank you, your Honor.

11        THE COURT:  Okay.

12            Mr. Padron.

13        THE DEFENDANT:  Can you hear me?

14        THE COURT:  I can hear you loud and clear.

10:37:42   15        THE DEFENDANT:  First of all, good morning to all of

16    you.

17        THE COURT:  Good morning.

18        THE DEFENDANT:  First of all, I want to thank God and

19    to all my family and friends who are here accompanying me today.

10:38:06   20            It is the hardest day of my life.

21            Thanks to my attorney, Marissel.  She has become

22    in these almost four years a lot more than an attorney.  She has

23    become a friend who I have admired and appreciated.

24            At the same time, I apologize most sincerely for

10:38:51   25    the mistake that I made that I know affects everyone in one way

1   or another.  First of all, I apologize to my mother who is here

2   in court today, to my mother, my siblings who are here today, my

3   wife and my -- especially my wife and my children.

4                    I also apologize to the judge, the agents, and to

10:39:45   5   the US Attorneys -- US Government attorneys for breaking or

6   violating one of their laws.  If it is true, indeed, that I did

7   not know much about the laws of the United States, it is also

8   true that not knowing the law does not excuse -- free me from

9   blame --

10:40:23   10                   MS. DESCALZO:  Excuse my behavior.

11                   THE INTERPRETER:  Excuse my behavior.

12                   THE DEFENDANT:  -- because I was aware that what I was

13   doing was not the right thing.

14                   And your Honor, Government attorneys, and agents,

10:40:46   15   I want to express my deepest regret for my actions; and believe

16   me, this is not the way I behave in my life.  But there are

17   times in which we find ourselves bound to proceed with conduct

18   that's inappropriate, especially in our country which is deep in

19   a profound social crisis, cost, among other things, by the high

10:41:36   20   levels of corruption by which all or almost all honest

21   businessmen find ourselves bound or -- to participate in.

22                   It touches every level and every area in our

23   country.  Something has come up when you don't submit to their

24   requirements of corruption and bribery --

10:42:32   25                   MS. DESCALZO:  You can't survive.

1          THE INTERPRETER:  -- you can't survive.

2          THE DEFENDANT:  And for sure, they will take you into

3   bankruptcy and sometimes death.

4          MS. DESCALZO:  Death by kidnapping.

10:42:54   5          THE INTERPRETER:  Death by kidnapping.

6          THE DEFENDANT:  That is the true situation in our

7   country.

8               I am aware of the crime I've committed, and I

9   perfectly understand the consequences of my actions.  And that's

10:43:20  10  why I'm here today assuming responsibility as my parents taught

11  me all my life.

12              They always told me to face your actions and

13  become responsible for them.  Whether you're at fault or not,

14  that's what you have to do, rectify and face your actions and

10:44:00  15  not do what some people advise me to do, to run and get away

16  from this country.

17              Finally, your Honor, I ask you from the bottom of

18  my heart a new opportunity, a new chance for me and for my whole

19  family and in that way be able to show all of you and to my

10:44:36  20  loved ones that I am capable of rectifying and continue a life

21  and road of honesty and good.

22              Thank you very much.

23          THE COURT:  Thank you, Mr. Padron.

24              All right.  Can I see counsel up here for a

10:45:01  25  second off the record.

1          (Side-bar discussion off the record.)

2          THE COURT:  All right.  I have considered the

3    Government's 5K motion in this case to reduce sentence as a

4    result of substantial cooperation.  I'm going to grant the

10:50:02    5    Government's motion.

6              However, I think under the circumstances of this

7    particular case and in view of this particular Defendant and the

8    actions he has taken, cooperating immediately once he was

9    approached by the agents, paying a substantial amount of money

10:50:17    10   judgment that has been imposed on him in this case, accepting

11   responsibility, cooperating, and three years, basically, on

12   pretrial release without any issues, I think I'm going to depart

13   downward further than the Government has asked me to do.

14             And I think that the Ramos case is a -- is

10:50:40    15   substantially similar to this case.  And so, I don't think that

16   -- I don't think that I should give him a period of

17   incarceration less than I imposed on Mr. Ramos; and I do believe

18   that a custodial sentence is required in this case based on all

19   the 3553(a) factors.

10:50:59    20             So, therefore, pursuant to the Sentencing Reform

21   Act of 1984, it is the judgment of the Court that the Defendant

22   is hereby committed to the custody of the Bureau of Prisons to

23   be imprisoned for a term of 18 months as to Count 1.

24             Upon release from imprisonment, the Defendant

10:51:13    25   shall be placed on supervised release for a term of three years

1    as to Count 1.

2              Within 72 hours of release from the custody of

3    the Bureau of Prisons, the Defendant shall report in person to

4    the probation office in the district to which the Defendant is

10:51:25   5    released.

6              While on supervised release, the Defendant shall

7    not commit another federal, state, or local crime; shall comply

8    with the standard conditions that have been adopted by this

9    Court; abide by any mandatory conditions required by law; and

10:51:38  10    shall comply with the following additional conditions:

11             You must provide the probation officer with

12   access to any requested financial information and authorize the

13   release of any financial information.  The probation office may

14   share that financial information with the US Attorney's Office.

10:51:51  15             You must not incur new credit card charges or

16   open additional lines of credit without the approval of the

17   probation officer.

18             You must pay the outstanding money judgment

19   imposed by the Court.

10:52:01  20             You must immediately report, continue to report,

21   or surrender to US Immigration and Customs Enforcement and

22   follow all their instructions and reporting requirements until

23   any deportation proceedings are completed.

24             If you are ordered deported from the United

10:52:13  25   States, you must remain outside the United States unless legally

1   authorized to reenter.

2           If you reenter the United States, you must report

3   to the nearest probation office within 72 hours after you

4   return.

10:52:27   5           You must seek proper documentation from US

6   Immigration and Customs Enforcement authorizing you to work in

7   the United States.

8           In view of the outstanding amount of the money

9   judgment, the Court is going to decline to impose a fine in this

10:52:38   10   case; however, there is a special assessment of $100 due

11   immediately.

12           Having assessed the Defendant's ability to pay,

13   payment of the total criminal monetary penalties shall be due as

14   follows:

10:52:48   15           The Defendant shall make a lump sum payment --

16   let's see.

17           Let's rework this.

18           THE PROBATION OFFICER:  It will be just the $100, your

19   Honor.

10:52:55   20           THE COURT:  The $100 special assessment will be due

21   immediately, and the balance will be due in payments of 200 --

22   let's see.

23           THE PROBATION OFFICER:  There will be no balance, your

24   Honor, because that was for the fine.

10:53:08   25           THE COURT:  That's for the fine?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

 1              THE PROBATION OFFICER:  Yes.

 2              THE COURT:  Okay.  So, the money judgment will be

 3   continued to be paid as it's being paid?

 4              THE PROBATION OFFICER:  Yes.

10:53:13  5              THE COURT:  Okay, thank you.

 6              All right.  I do need to advise Mr. Padron of his

 7   rights to appeal.

 8                   Sir, you can, generally, appeal your conviction

 9   and your sentence; however, you may give up some of those appeal

10:53:22 10   rights in a plea agreement; and the plea agreement that you have

11   entered into in this case does, in fact, waive some or all of

12   your rights to appeal.

13                   These waivers are, generally, enforceable;

14   however, if you believe that waiver is invalid, you can present

10:53:35 15   that theory to the Court of Appeals.

16                   If you file an appeal in this case, it must be

17   filed within 14 days of the entry of judgment.  If you cannot

18   afford to pay the costs on appeal, you can ask to proceed

19   without paying costs; and you have the right to have an attorney

10:53:49 20   appointed to represent you on appeal.

21              Do you have any objection to voluntary surrender?

22              MS. EDWARDS:  No, your Honor.

23              THE COURT:  All right.  So, he needs -- there's a form

24   that he needs to sign before he leaves with respect to voluntary

10:54:00 25   surrender.

1           Placement request to the Bureau of Prisons?

2  Someplace close to Miami?

3           MS. DESCALZO:  Your Honor, we would request that your

4  Honor recommend the FCI camp in Miami.

10:54:13   5           THE COURT:  FCI camp in Miami.  I'll make that

6  recommendation to the Bureau of Prisons.

7           Anything else from the Government?

8           MS. EDWARDS:  If your Honor could formally incorporate

9  the money judgment into -- that you previously entered into his

10:54:26   10  judgment.

11           THE COURT:  Ah, yes.

12           THE PROBATION OFFICER:  It will be part of the

13  judgment.

14           THE COURT:  We will incorporate it into the judgment.

10:54:31   15           MS. EDWARDS:  And we would also move at this time to

16  unseal Mr. Padron's plea agreement which has remained sealed

17  during the pendency of this case.

18           THE COURT:  The whole case is sealed, isn't it?  Do

19  you want to --

10:54:40   20           MS. EDWARDS:  We unsealed the case earlier this summer

21  in June but not the plea agreement.

22           THE COURT:  All right.  The plea agreement is

23  unsealed.

24           All right, good.

10:54:47   25           Anything else from the Defendant?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1              MS. DESCALZO:  No, your Honor.
 2              THE COURT:  All right.  Good luck to you, Mr. Padron.
 3              MS. DESCALZO:  Thank you, your Honor.
 4          (Proceedings concluded at 10:54 a.m.)
 5
 6
 7
 8
 9
10
11                    C E R T I F I C A T E
12
13        I certify that the foregoing is a correct transcript
14   from the record of proceedings in the above-entitled matter, to
15   the best of my ability.
16
17   By: /s/Gayle L. Dye                    12/ 31/ 2019
18          Gayle L. Dye, CSR, RDR, CRR       Date
19
20
21
22
23
24
25
```